IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| TOM GOULD, *et al.*, | |
| Plaintiffs, | |
| v. | 2:25-CV-147-Z |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Preliminary Injunction ("Motion"), filed July 2, 2025. ECF No. 9. Defendants responded on July 23, 2025. ECF No. 17. Plaintiffs replied on August 6, 2025. ECF No. 18. The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Motion is **GRANTED**.

BACKGROUND

Over 50 years ago, Congress passed the Horse Protection Act ("HPA") to prohibit the practice of "soring" horses—that is, intentionally inflicting pain to a horse's legs or hooves by physical or chemical means to exaggerate the horse's gait and thereby gain an unfair advantage at horse shows. 15 U.S.C. § 1821 *et seq.* Soring has primarily been used on Tennessee Walking Horses, known for their distinctive, high-stepping gait, as the pain forces the horse to quickly lift its legs to avoid discomfort and causes a more pronounced walk that improves competitive performance. Accordingly, the Secretary of the United States Department of Agriculture ("USDA" or "Agency") is "authorized to issue such rules and regulations as he deems necessary to carry out the provisions" of the HPA—including rules and regulations promulgated to prohibit soring. *Id.* at § 1828.

The USDA has done exactly that. Now, Plaintiffs raise three discrete issues pertaining to USDA's rules and procedures. First, Plaintiffs argue that the USDA's "No-Showback Rule" is unlawful. Second, Plaintiffs argue that the USDA's Scar Rule is unlawful. Third, Plaintiffs believe that USDA rules governing the horse-inspection process fail to provide due process. *See* ECF No. 10 at 7–9. Plaintiffs seek entry of a preliminary injunction, asking the Court to prevent the USDA from applying the allegedly unlawful rules against them and their horses at the upcoming 2025 Celebration. *Id.* at 6 ("Plaintiffs Gould and Mills both intend to have their horses compete" and be subjected to inspection under USDA's rules, and the Association must "enforce *all* disqualifications USDA makes under its unlawful rules").

### LEGAL STANDARD

Federal courts have the power to issue preliminary injunctions under Federal Rule of Civil Procedure 65. A preliminary injunction is an extraordinary remedy requiring the movant to unequivocally demonstrate it is entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain one, the movant must show "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest." *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024) (citing *Winter*, 555 U.S. at 20). The first factor is "the most important." *Mock v. Garland*, 75 F.4th 563, 587 n.50 (5th Cir. 2023). The latter two merge when the government is an opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). But no factor has a "fixed quantitative value." *Mock*, 75 F.4th at 587. On the contrary, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* In sum, the "decision to grant or deny [relief] lies within the sound discretion of the trial court." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). But a court's equitable power is confined to giving parties to the suit complete relief, as federal courts lack

the power to issue universal injunctions. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2554 (2025) ("Because the universal injunction lacks a historical pedigree, it falls outside the bounds of a federal court's equitable authority under the Judiciary Act.").

**ANALYSIS**

**I. Statute of Limitations**

28 U.S.C. Section 2401(a) provides the applicable statute of limitations for APA claims. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024). This section mandates that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

Defendants argue that Plaintiffs' "facial claims are time-barred because the statute of limitations period for those claims 'first accrue[d]' when the regulations and challenged policy were first applied to Plaintiffs, which was far longer than six years ago." ECF No. 17 at 14. According to Defendants, Plaintiff Mills's horses "have been determined non-compliant with the HPA on at least four occasions outside the six-year limitation period," beginning on August 23, 2014. *Id.* at 16. Plaintiff Gould's horses were noncompliant as early as August 30, 2015. *Id.* Defendants similarly highlight that the "No-Showback Rule was issued in 2010" and the "Scar Rule was first promulgated in 1979," demonstrating that the Association was subject to these regulations for more than six years before filing suit. *Id.* at 15–16.

Plaintiffs disagree. Although Plaintiffs were undoubtedly subject to USDA's rules more than six years ago, they contend any agency application of a rule to a party within six years of filing suit creates an opportunity for judicial review. ECF No. 18 at 6–8. Thus, because "USDA has applied the challenged rules in final disqualification decisions that (i) as to Plaintiffs Gould and Mills, disqualified their horses, and (ii) as to the Association, required it to disqualify horses at its shows," Plaintiffs are not barred from challenging the USDA's

3

rules. *Id.*; ECF No. 10 at 14 (discussing the disqualification of Mills's horse on August 24, 2023, and Gould's horse on September 28, 2024).

Plaintiffs are correct. Generally, a plaintiff must bring any claims challenging agency action within six years of the right of action first accruing—meaning when a "plaintiff has a complete and present cause of action." *Corner Post, Inc.*, 603 U.S. at 809 (internal citation omitted). But the Fifth Circuit has plainly stated that "a plaintiff who misses this window *may still obtain effective review* of the regulation by instead bringing a challenge within six years of a later final agency action that applies the regulation to the plaintiff." *Am. Stewards of Liberty v. Dep't of Interior*, 960 F.3d 223, 229 (5th Cir. 2020) (emphasis added). Where "the ground for challenge is that the issuing agency exceeded its constitutional or statutory authority" and the plaintiff shows "some direct, final agency action involving the particular plaintiff within six years of filing suit," no statute of limitations issue exists. *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997), *abrogated on other grounds by Corner Post, Inc.*, 603 U.S. 799.

Just so here. Plaintiffs bring the instant suit to challenge three USDA rules—the No-Showback Rule, the Scar Rule, and rules permitting disqualification of horses without due process. ECF No. 10 at 6–9. The ground for Plaintiffs' challenge is that the issuing agency, the USDA, exceeded its statutory authority. *Id.* And Plaintiffs were subject to direct, final action by the USDA within six years of filing suit, based on (i) the disqualification of Gould's and Mills's horses in 2023 and 2024 and (ii) the Association being required to disqualify horses at its shows. ECF No. 18 at 7; *Am. Stewards of Liberty*, 960 F.3d at 229 ("An agency applies a regulation to a party when it, for example, issues an order requiring a plaintiff to comply with the regulation, imposes a fine or other sanction against the plaintiff for violating the regulation, or denies a plaintiff's petition to rescind the regulation.").

4

Accordingly, Plaintiffs face no statute of limitations problem and may challenge USDA's rules.

## II. Likelihood of Success on the Merits

A movant seeking injunctive relief must demonstrate "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest." *Abbott*, 110 F.4th at 706 (citing *Winter*, 555 U.S. at 20). The Court begins with the first element: likelihood of success on the merits. "To show a likelihood of success, [plaintiffs] must present a prima facie case, but need not prove that [they are] entitled to summary judgment." *TitleMax of Tex., Inc v. City of Dall.*, 142 F.4th 322, 329 (5th Cir. 2025) (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013)). Though there "is no particular degree of likelihood of success" that is always required, the moving party "must establish as least *some* likelihood of success on the merits." *N. Miss. Med. Ctr., Inc. v. Quartiz Techs.*, No. 23-60483, 2025 WL 980568, at *3 (5th Cir. Apr. 1, 2025).

Plaintiffs argue that they "can readily show that they are likely to succeed in their challenges seeking to set aside the unlawful USDA rules that were applied in the disqualifications at issue in this case." ECF No. 10 at 17. Three USDA rules are at issue: the No-Showback Rule, the Scar Rule, and the rules allowing for the disqualification of horses without due process. *Id.* at 6–9.

### A. The No-Showback Rule is likely unlawful.

The HPA provides that a horse can be considered "sore" when certain actions are taken—such as applying irritants or inflicting injury—and, as a result, the horse "suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving." 15 U.S.C. § 1821(3)(A)–(D). Then, "the management of any horse or show or horse exhibition shall disqualify any horse from being

5

shown or exhibited (1) which is sore or (2) if the management has been notified . . . that the horse is sore." 15 U.S.C. § 1823(a). These two provisions prevent horses determined sore from being "shown back" or competing on a later day—together, the "No-Showback Rule." ECF Nos. 10 at 7, 17–19; 17 at 18–20.

### i. Excess of Statutory Authority

Plaintiffs claim that "the No-Showback Rule exceeds the scope of USDA's authority," as it "requires barring a horse disqualified at one point in time from an entire multi-day show even though there is no basis for believing that such a horse will continue to be sore as defined in the statute on subsequent days." ECF No. 10 at 7, 17. Rather, the text of the HPA "prohibits only showing a horse that is *presently* sore. It does not give the USDA authority to prohibit the showing of a horse that 'was sore' a few days ago or 'has been sore.'" *Id.* at 7 (emphasis in original). USDA is not permitted, in Plaintiffs' view, to "rewrite the statute" and disqualify horses that may have been sore but are not currently sore. *Id.* at 18.

Defendants believe that the HPA's definition of "sore" covers "the uses of non-compliant action devices, substances, and shoeing which can reasonably be expected to cause a horse to suffer." ECF No. 17 at 19; 15 U.S.C. § 1821(3). This means that a horse need not be presently suffering to be "sore," so long as the horse "can reasonably be expected" to "suffer physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving." *Id.* Defendants further assert that it is impossible to know how long a sore horse will remain so—but the HPA "does not require knowledge of this fact to disqualify sore horses from the remaining events during a show." ECF No. 17 at 20. In their eyes, because the No-Showback Rule is "authorized by 15 U.S.C. § 1823(a)" and "is rationally connected to the agency's authority to administer the [HPA] because it is necessary to deter individuals from showing horses that are sore or from utilizing prohibited substances or devices," the Rule "does not exceed statutory authority." *Id.* at 19–20.

6

The Court anchors its analysis in the plain text of the HPA. The text is straightforward: management must disqualify a horse that *is* sore or *reasonably expects* to be sore. *See* 15 U.S.C. §§ 1821(3), 1823(a). The language of the HPA concerns only the present and future existence of soreness—not soreness of the past. The USDA may only prohibit showing a horse that "*is* sore." 15 U.S.C. § 1823(a) (emphasis added). Allowing for the disqualification of horses that *used to be* sore flouts the plain text of the HPA.

Plaintiffs correctly use the example of a horse disqualified on the first day of a show for bilateral sensitivity in its front pasterns—the lower part of a horse's leg, just above the hoof. ECF No. 10 at 18. Such soreness can result from causes other than soring and could dissipate within a day, after which point the horse would pass inspection without signs of pain. *Id.* But, under the "No-Showback Rule," the horse would be barred from further inspection and the ability to compete—directly conflicting with the HPA's text-cabined mandate prohibiting the showing of a horse that is *presently* sore. Although the goal of deterring soring is laudable, a horse may not be precluded from competition simply because it was sore in the past. Thus, the No-Showback Rule does not comport with the plain text of the HPA and likely constitutes an excess of statutory authority.

### ii. Arbitrary and Capricious

Because the Agency has acted in excess of statutory authority, the Court does not consider the parties' remaining arguments regarding arbitrary and capricious rulemaking. *See Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch. Comm'n*, No. 4:24-CV-250, 2024 WL 4858589, at *8 (N.D. Tex. Nov. 21, 2024) (disregarding plaintiffs' remaining arguments based on a prior determination that statutory authority was exceeded).

### B. The Scar Rule is likely unlawful.

The Scar Rule was promulgated to help inspectors determine whether a horse is sore. The Scar Rule provides certain criteria that, when satisfied, require that a horse be

7

considered "sore." 9 C.F.R § 11.3 (2025). Specifically, inspectors must disqualify horses as sore if they observe "bilateral granulomas," "evidence of inflammation," or "excessive loss of hair" on the horse's skin. *Id.*; 15 U.S.C. § 1823(a).

### i. Excess of Statutory Authority

Plaintiffs believe that the Scar Rule "uses criteria that bear no relation to the HPA's definition of sore," thus "redefin[ing] and exceed[ing] the scope of the statutory definition." ECF No. 10 at 8, 22. Plaintiffs use the following example: under the Scar Rule, a horse may be found sore and disqualified for an "excessive loss of hair." 9 C.F.R. § 11.3 (2025). But "loss of hair is not found in the statutory definition of 'sore,' and there are many reasons"—such as the use of permitted training equipment or naturally occurring skin conditions like pastern dermatitis—"for hair loss that have no relation to soring as defined in the Act." ECF No. 10 at 22–23. Further, Plaintiffs argue that the Scar Rule "departs from the statute because it requires inspectors to disqualify a horse if the horse evidences it may have been sored at some point in the past, without establishing that the horse is *presently* sore." *Id.* at 23 (emphasis in original).

Defendants disagree. They contend that the Scar Rule "falls squarely within" the mandate of 15 U.S.C. Section 1828, authorizing the USDA to "issue such rules and regulations as [the Secretary] deems necessary to carry out the provisions" of the HPA. ECF No. 17 at 22. Thus, "[t]he USDA has authority," say Defendants, "to issue regulations implementing [the statutory definition of 'sore'], which it has done through the Scar Rule." *Id.* Defendants argue that "Plaintiffs have not made a sufficient showing that the Scar Rule applies to wounds that are not reasonably expected to cause a horse to suffer in accordance with the statutory definition," and have thus failed to show that the USDA is acting in excess of statutory authority. *Id.*

8

As this Court has previously noted, the Scar Rule is "disreputable and unscientific" and is "a relic of a bygone era in which '[s]cars were very likely present in the lesions seen on sore [Tennessee Walking Horses].'" *Tenn. Walking Horse Nat'l Celebration Ass'n v. United States Dep't of Agric.*, 765 F. Supp. 3d 534, 534 (N.D. Tex. 2025) ("TWHNCA") (quoting NAT'L ACADS. OF SCIS., ENG'G, AND MED., A REVIEW OF METHODS FOR DETECTING SORENESS IN HORSES 84 (2021)). The conditions specified by the Scar Rule run contrary to the HPA, where a finding of soreness requires that a horse "suffer[], or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving." 15 U.S.C. § 1821(3). As Plaintiffs discuss, a horse could be disqualified as sore under the Scar Rule without any proof of specific misconduct of soring. *See TWHNCA*, 765 F. Supp. 3d at 543. Certainly, something like hair loss or particular skin conditions can occur naturally and have no relation to soring. *See* ECF No. 10 at 23 (discussing how the skin condition pastern dermatitis "can be marked by hair loss" but has many natural causes, such as "bacterial infection, worm or mite infection, and irritation from exposure to alkaline soil"). The HPA's statutory definition of "sore" fails to support the Scar Rule's current criteria.

Further, evidence of *past* soring is not—and should not be—a basis for disqualification of a horse not found to be currently sore. The Scar Rule requires that "[t]he anterior and anterior-lateral surfaces of the fore pasterns (extensor surface) must be free of . . . evidence of abuse indicative of soring." 9 C.F.R. § 11.3 (2025). Under this Rule, a non-sore horse displaying such scarring from *past* incidents—whether due to soring or another naturally occurring reason—would be disqualified. Absent additional evidence demonstrating that the horse currently suffers or could reasonably be expected to suffer physical pain or distress, prior injury alone is an insufficient basis for disqualification under the HPA. Accordingly, the No-Showback Rule does not align with the plain text of the HPA and likely constitutes an excess of statutory authority.

*ii. Unconstitutionally Vague and Arbitrary and Capricious*

As discussed *supra* in Section I(A)(ii), the Court does not consider the parties' remaining arguments based on its determination that the Agency acted in excess of statutory authority.

### C. The USDA's horse disqualification process likely fails to provide adequate due process.

USDA rules govern the horse inspection process, whereby a horse may be determined sore. *See* 9 C.F.R. § 11.4 (2025). Currently, these rules do not provide the opportunity for a hearing, or for anyone to contest an inspector's decision, prior to a horse being permanently disqualified from competing. Currently, a disqualification can only be challenged by means of administrative complaint or a criminal action. 15 U.S.C. § 1825 (a), (b).

Plaintiffs similarly note that "[w]hen USDA disqualifies a horse at a show, its rules provide no mechanism whatsoever to appeal those decisions. Instead, once USDA tells show management (like the Association) that a horse is in violation, management is required to disqualify the horse and there is no pre-deprivation—or even post-deprivation—review." ECF No. 10 at 7. Thus, Plaintiffs feel that "USDA's failure to provide pre-deprivation review before a horse is barred from competing violates the Due Process Clause." ECF No. 10 at 20. They further believe that USDA's "failure to provide any appeal also flouts the fundamental tenet of due process that a person is entitled to an impartial and disinterested adjudicator," as "there is no guarantee of a neutral arbiter" when a horse is disqualified based on the judgment of a single inspector. *Id.* at 22.

Defendants merely harken back to this Court's holding in *TWHNCA*, rejecting the USDA's argument that the 2024 Rule at issue satisfied due process. ECF No. 17 at 21. Specifically, the Court held that "pre-deprivation review is required and is not adequately provided by the 2024 Rule," and that the attempted "post-deprivation remedies provided by

the 2024 Rule are insufficient." *TWHNCA*, 765 F. Supp. 3d at 546. Defendants state that "[w]ithout conceding the issue, [they] acknowledge that the Court's prior reasoning suggests a likelihood of success on the merits as to Plaintiffs' due process claims here." ECF No. 17 at 21.

They are correct. Just as a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," a court must also strike down agency action that is "contrary to constitutional right." 5 U.S.C. § 706(2)(A), (B). Agency action that fails to provide due process is contrary to constitutional right. Naturally, a government deprivation of property must typically be preceded by adequate process; "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). A three-factor test, balancing the government's interests against the Plaintiffs', governs whether a pre-deprivation hearing is necessary: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334–35.

Plaintiffs are likely to satisfy the *Mathews* three-factor test, meaning that more adequate pre-deprivation review is needed. The first *Mathews* factor—regarding a private interest affected by the official action—weighs in favor of Plaintiffs, as Tennessee Walking Horse owners and trainers have a property right to show their horses. *TWHNCA*, 765 F. Supp. 3d at 545 (discussing how "Tennessee Walking Horse owners and trainers have a property right to show their horses"). Thus, there is "a constitutionally protected interest in showing [Tennessee Walking Horses] without unreasonable government interference." *Id.*

(quoting *McSwain v. Vilsack*, No. 1:16-CV-1234, 2016 WL 4150036, at *4 (N.D. Ga. May 25, 2016)).

The second *Mathews* factor is likely to be satisfied, too. The risk of an erroneous deprivation under the current USDA procedures is certainly present, as horses can be disqualified based on the judgment of a single horse inspector without any means of pre-deprivation review. *See Arzate v. Andrews*, No. 1:25-CV-942, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025) ("[A]llowing a neutral arbiter to review [these] facts would significantly reduce the risk of erroneous deprivation.") (internal citation omitted). This Court previously held that under the 2024 Rule, which sought to provide due-process protections, the risk of erroneous deprivation was *still* too high. *See TWHNCA*, 765 F. Supp. 3d at 545–46 ("This inspection and appeal process is ripe for causing erroneous deprivation, as there is no true hearing prior to deprivation—the disqualification of a horse from competition."). In short, the 2024 Rule attempted to provided more safeguards than the current system, yet this Court found it constitutionally lacking—the current USDA system, offering less, fares no better.

Analysis of the third *Mathews* factor—the Government's interest and burden—also likely weighs in favor of Plaintiffs. Although no mechanism for pre-show review currently exists, discovery of a workable solution cannot be deemed impossible or even impracticable. "Convenience must not come at the expense of constitutional violation." *TWHNCA*, 765 F. Supp. 3d at 546. Accordingly, the USDA's current lack of pre-deprivation review likely fails to provide due process. Plaintiffs have shown a likelihood of success on the merits that the three challenged USDA rules are in excess of statutory authority.

### III. Likelihood of Suffering Irreparable Harm

The Court proceeds to the second preliminary injunction element. A movant must demonstrate he is likely to suffer irreparable harm if a preliminary injunction is not granted.

*See Abbott*, 110 F.4th at 706. Preventing irreparable harm is the "central purpose of a preliminary injunction" that justifies such an exercise of "equitable power." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). An irreparable harm is one that cannot be adequately remedied at law. *Daniels Health Scis., LLC*, 710 F.3d at 585. Thus, if adequate compensatory relief may later be available in the ordinary course of litigation, then irreparable harm may not be present. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 474 (5th Cir. 1985).

### A. Absent injunctive relief, Plaintiffs Gould and Mills will likely suffer irreparable harm

Plaintiffs argue the USDA's rules will inflict irreparable harm. ECF No. 10 at 28. Plaintiffs Gould and Mills "plan to continue showing their horses—including at this year's Celebration in August—where each of USDA's unlawful rules will be applied to them." *Id.* And "[i]f their horses are disqualified under USDA's rules without any mechanism for review, that will plainly violate their rights under the Due Process Clause." *Id.* Further, they "also face irreparable harm if their horses are disqualified under either the Scar Rule or the No-Showback Rule." *Id.* Plaintiffs believe that, should their horses be disqualified, "there will be no way to remedy that deprivation after the fact." *Id.* at 29.

Defendants, on the other hand, argue that Plaintiffs' "arguments for preliminary injunctive relief appear to go only toward putative prospective injury." ECF No. 17 at 25. "The most recent of the challenged rules and policies have been in effect for at least 15 years," they note, and Plaintiffs Gould and Mills "have successfully shown horses for years under these rules." *Id.* at 26. "Plaintiffs have offered no more than speculation that irreparable harm will occur." *Id.* at 25.

As previously discussed, Plaintiffs Gould and Mills have a constitutionally protected right to show their horses without undue interference. *See supra* Section II(C); *TWHNCA*,

13

765 F. Supp. 3d at 545 (quoting *McSwain*, 2016 WL 4150036, at *4). If their horses are disqualified under USDA's current rules, that will impinge on their rights under the Due Process Clause—meaning that an "alleged fundamental right is either threatened or in fact being impaired." *Mock*, 697 F. Supp. 3d at 577 (internal marks omitted) ("Upon a showing that an 'alleged' fundamental right is 'either threatened or in fact being impaired,' a movant is substantially threatened with irreparable injury that 'cannot be undone by monetary relief.'"). Thus, Plaintiffs have properly made out an "alleged violation" or "deprivation" of a constitutional right sufficient to demonstrate that non-monetary, irreparable harm is threatened. *See, e.g., Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295–97 (5th Cir. 2012) ("'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" (quoting 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995))); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 856 (N.D. Tex. 2022) (O'Connor, J.) ("Even 'alleged' deprivations of constitutional or procedural rights may justify injunctive relief."). Thus, Plaintiffs Gould and Mills have provided sufficient evidence to find they satisfy the irreparable harm factor.

### B. Absent injunctive relief, the Association will likely suffer irreparable harm.

Plaintiffs further allege that the "Association will also be irreparably harmed absent an injunction." ECF No. 10 at 29. They claim that the "Association also has a due process right to exhibit horses at its shows without undue government interference." *Id.* Moreover, "disqualifications under USDA's unlawful rules irreparably harm the Association's ability to put on a successful horse show," as the "quality of the entire show is irreparably degraded and the Association suffers unrecoverable financial losses." *Id.*; ECF No. 10-1 at 7–8 (describing the "substantial harm" caused to the Association by USDA's rules).

Defendants disagree. They assert that the Association cannot demonstrate that if the Agency were enjoined, the shows "would attract more stakeholders, including but not limited to more horses, trainers, owners, exhibitors, or any other stakeholder." ECF No. 17 at 25. Further, Defendants believe that injunctive relief would actually "disrupt [the August 20, 2025, Celebration show] and cause confusion to inspectors and show participants alike." *Id.*

Beyond Gould and Mills, the Court finds ample support to conclude the Association would suffer irreparable harm absent an injunction. When horses are disqualified—often in large numbers—the Association suffers both non-monetary and monetary harm. *See* ECF Nos. 10 at 29; 10-1 at 7–8 (discussing the horse disqualification rate of 57% at last year's Celebration show). Since 2010, when the No-Showback Rule was implemented, "there has been a 42% drop in ticket sales and 22% drop in entries at the Celebration." ECF No. 10-1 at 8. Certainly, these losses are not theoretical and directly impact the Association's ability to put on a successful show—"owners and trainers will not enter their horses in competition" and "[f]ans expecting to see a particular hose may be disappointed and will not buy tickets for later days of the show when that horse is disqualified." ECF No. 10-1 at 7–8. Thus, the Association has provided sufficient evidence to find it satisfies the irreparable harm factor.

### IV. Balance of Equities and Public Interest

The remaining preliminary injunction factors require that the "balance of equities" tip in Plaintiffs' favor and that the "public interest" would be served by an injunction. These two factors "merge when the Government is the opposing party," as here. *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023). To prevail on these factors, the movant must establish that his irreparable harm is greater than the hardship the government would incur from a preliminary injunction. A court is to weigh "the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief" while at the same time considering the public consequences of granting

15

the preliminary injunction. *Winter*, 555 U.S. at 24, 129 S.Ct. 365 (quoting *Amoco Prod. Co. v. Cambell*, 480 U.S. 531, 542 (1987)). District courts may consider an opposing party's harms, but they may not consider a party's desire or interest in continuing to engage "in an alleged violation" of a statute. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 362 (2024) (Jackson, J., concurring in part and dissenting in part).

Plaintiffs each assert their alleged claims of injury and that "there is generally no public interest in the perpetuation of unlawful agency action." ECF No. 10 at 30 (quoting *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)). And while the goal of "eliminating the abhorrent act of soring" is admirable, Plaintiffs argue that this goal still does not permit unlawful agency action. Conversely, Defendants argue that the "harm to Defendants from an injunction would be substantial." ECF No 17 at 27. Specifically, Defendants express concern that "[w]ithout the No-Showback policy, there would be diminished deterrence for noncompliance," that an injunction would "frustrate the public interest in preventing cruelty to animals," and that an injunction would introduce "even greater lack of clarity." *Id.* at 27–28.

Plaintiffs prevail on these factors as well. Here, Plaintiffs would incur hardship if forced to comply with USDA's current rules, which likely constitute an excess of statutory authority. Although Defendants' concerns are not without merit, compliant horse-show participants must not continue to be unfairly punished alongside offenders to preserve the comfort and convenience of the status quo. And while the goal of preventing soring is undeniably laudable, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021). Prevention must not devolve into unfettered discretion. *See TWHNCA*, 765 F. Supp. 3d at 540. Thus, the Court concludes that all equitable factors favor the granting of a preliminary injunction.

CONCLUSION

For the above reasons, Plaintiffs' Motion is **GRANTED**, only to the extent necessary to provide complete relief to each named plaintiff. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2560, 2562–63 (2025) ("[F]ederal courts lack authority to issue [universal injunctions]."). Defendants are preliminarily **ENJOINED** from enforcing the USDA's No-Showback Rule, the Scar Rule, and the disqualification rules that fail to provide adequate due process.

**SO ORDERED.**
August 19, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE