IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| TOM GOULD, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | 2:25-CV-147-Z |

**MEMORANDUM OPINION AND ORDER**

Two motions are before the Court. First, a Joint Motion for Partial Summary Judgment, filed February 9, 2026 ("Judgment Motion"). ECF No. 37. Second, Plaintiffs' (Contested) Motion on the Scope of Relief, filed April 3, 2026 ("Relief Motion"). ECF No. 41.[1] Defendants filed a response in opposition to the Relief Motion on April 24, 2026. ECF No. 44. Plaintiffs replied in support on May 8. ECF No. 52. Both Motions are now ripe. For the reasons herein, both Motions (ECF Nos. 37, 41) are **GRANTED**.

**BACKGROUND**

The Court recounted the background facts of this dispute in its August 19, 2025 Memorandum Opinion and Order ("Preliminary Injunction Order"). ECF No. 20. In short, Congress passed the Horse Protection Act ("HPA") over 50 years ago to prohibit the practice of horse soring. *Id.* at 1. USDA issued rules and regulations under its HPA authority to carry

[1] In the Relief Motion, Plaintiffs' request "to be heard on their Motion as soon as the Court's schedule allows." ECF No. 41 at 1. But Plaintiffs *have* been heard on their Motion. ECF Nos. 42 (Plaintiffs' Brief in Support), 52 (Plaintiffs' Reply in Support); *see Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969) (noting that the term "hearing" can mean "written papers without oral argument of any kind"). To the extent Plaintiffs request a live, oral hearing, that request is **DENIED**. The Fifth Circuit's recent disposition in *Texas Med. Ass'n v. HHS*, No. 23-40605, 2026 WL 2322331 (5th Cir. Aug. 11, 2026) makes this case relatively easy to resolve. This Court routinely resolves legal issues much more complex than those presented here without a live hearing.

out the provisions of the HPA. *Id.* at 1–2. Plaintiffs challenge three aspects of the USDA's rules and regulations related to horse soring: (1) the No-Showback Rule; (2) the Scar Rule; and (3) rules governing the horse-inspection process that fail to provide due process ("Challenged Rules"). *Id.* at 2. Plaintiffs also challenge specific horse disqualifications as applications of the Challenged Rules ("Challenged Disqualifications"). *See* ECF No. 41-1.

In its Preliminary Injunction Order, the Court preliminarily enjoined Defendants from enforcing the Challenged Rules. ECF No. 20 at 17. The Court found Plaintiffs were likely to succeed on the merits of their claims that the No-Showback Rule and the Scar rule exceed USDA's statutory authority, and their claim that USDA's horse-disqualification rules fail to provide adequate due process. *Id.* at 5–12. The Court also found the other preliminary injunction factors weighed in favor of granting an injunction. *Id.* at 12–16. Thus, the Court enjoined the Defendants from enforcing the Challenged Rules, but "only to the extent necessary to provide complete relief to each named plaintiff." *Id.* at 17 (citing *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)).

The parties partially agree and partially disagree about what the Court should do next. The parties agree the Court should enter partial summary judgment in Plaintiffs' favor consistent with the Preliminary Injunction Order. ECF No. 37. But they disagree about the scope of the proper remedy in two respects. *See* ECF No. 44 at 1. First, Plaintiffs argue the Court should vacate the Challenged Rules for parties and nonparties alike (ECF No. 42 at 2–6), while Defendants argue relief should be limited to the Plaintiffs (ECF No. 44 at 3–11). Second, Plaintiffs argue the Court should vacate all the Challenged Disqualifications (ECF No. 42 at 2, 4–5), while Defendants argue the Court should only vacate disqualifications of horses owned by the individual Plaintiffs (ECF No. 44 at 1–3).

## ANALYSIS

The parties jointly "request that the Court adopt the reasoning and conclusions from its [Preliminary Injunction] Order and grant partial summary judgment in Plaintiffs' favor." ECF No. 37 at 1. Given Plaintiffs' success at the preliminary injunction stage, "Defendants acknowledge that dispositive motion practice is not likely to change the Court's views as to the merits of the claims." *Id.* at 3.

The Court agrees. For the reasons stated in this Court's August 19, 2025 Preliminary Injunction Order (ECF No. 20), the Court **GRANTS** summary judgment in Plaintiffs' favor on Counts One, Three, and Four. *See F.T.C. v. Assail, Inc.*, 98 F. App'x 316, 317 (5th Cir. 2004) (district courts have the authority to convert preliminary relief into final relief). For the same reasons the Court found Plaintiffs were likely to succeed on the merits of those claims, the Court now finds Plaintiffs have succeeded on the merits of those claims. Specifically, the Court finds: (1) the No-Showback Rule exceeds the scope of USDA's statutory authority (ECF No. 20 at 6–7, Count One); (2) the Scar Rule exceeds the scope of USDA's statutory authority (ECF No. 20 at 8–9, Count Four); and (3) The USDA's horse disqualification process fails to provide adequate due process (ECF No. 20 at 10–12, Count Three).[2]

The Court now considers the proper remedy. Plaintiffs request vacatur of both the Challenged Rules and the Challenged Disqualifications. ECF No. 41. As to the Challenged Rules, Plaintiffs insist that vacatur, by its nature, nullifies the vacated rule for everyone, parties and nonparties alike. ECF No. 42 at 2–3. Vacatur is the default remedy in the Fifth Circuit, Plaintiffs note, and they argue there is no reason to depart from vacatur—or

[2] The remainder of Plaintiffs' Claims are **DISMISSED without prejudice**. *See* ECF No. 37 at 3 n.2 ("If the Court accepts this proposal, Plaintiffs agree to dismiss without prejudice Counts [Two], [Five], and [Six] . . . .").

vacatur's broad scope—here. *Id.* at 2–6. Defendants argue the APA does not authorize vacatur—or at least "universal" vacatur—so the remedy must be limited to providing the Plaintiffs complete relief. ECF No. 44 at 3–8. In the alternative, Defendants argue the Court should construe "the APA to permit, but not require, universal vacatur." *Id.* at 10. Thus, the Court should consider traditional equitable principles and limit the scope of vacatur to only provide relief to the Plaintiffs. *Id.* at 8–11.

Plaintiffs are correct. In the Fifth Circuit, "[t]he default rule is that vacatur is the appropriate remedy" in a successful APA challenge to a regulation. *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022) (Oldham, J.). And vacatur "extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to 'set aside'—*i.e.*, formally nullify and revoke—an unlawful agency action." *Id.* (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 950 (2018)); *see also Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) ("[R]elief under Section 706 . . . is not party-restricted and allows a court to 'set aside' and unlawful agency action."). Moreover, the APA makes vacatur the *mandatory* remedy in a successful challenge to a regulation. 5 U.S.C. § 706(2) ("The reviewing court *shall* . . . hold unlawful and set aside agency action." (emphasis added)); *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097, 1114 (5th Cir. 2024) ("Under [S]ection 706 of the APA, when a court holds that an agency rule violates the APA, it 'shall'—not may—'hold unlawful and set aside' the agency action." (internal marks omitted)); *see also* Mitchell, *supra*, at 950 ("Section 706 of the APA authorizes and requires a court to 'set aside' agency rules and orders that it deems unlawful or unconstitutional.").

Defendants' arguments to the contrary are not persuasive. Just this month, the Fifth Circuit rejected arguments nearly identical to those raised by Defendants here and

reaffirmed that vacatur is the appropriate remedy under the APA. *Texas Med. Ass'n*, 2026 WL 2322331, at *8 (per curiam) (en banc). There is a case to be made against so-called "universal vacatur"—but those arguments have not been adopted in this Circuit. *See id.* at *8–9 (Ho., J., concurring) (articulating the argument against "universal vacatur," but concluding that "our circuit precedent goes the other way, and . . . there is not presently interest to revisit that precedent."). And the Supreme Court has not held that APA vacatur—as opposed to injunctive relief—must be party specific. *CASA*, 606 U.S. at 847 n.10 ("Nothing we say today resolves the distinct question whether the [APA] authorizes federal courts to vacate federal agency action.").[3] The United States Supreme Court may one day decide the APA does not authorize vacatur. *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, Thomas, and Barrett, JJ. concurring in judgment) (noting skepticism that Section 706(2) authorizes vacatur). Or it might not. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) ("The APA authorizes vacatur of agency rules."). For now, this Court must apply the Fifth Circuit's "default remedy"—(universal) vacatur.[4]

Regarding the Challenged Disqualifications, Plaintiffs request the Court vacate all the disqualifications listed in its Exhibit A. *See* ECF No. 41-1. Defendants note that most of the Challenged Disqualifications involve horses not owned by the individual named Plaintiffs. ECF No. 44 at 1. The Plaintiffs cannot seek to vindicate the rights of horse owners

---

[3] This Court ordered *injunctive* relief in its Preliminary Injunction Order, and thus limited the relief to the named Plaintiffs under *CASA*. *See* ECF No. 20 at 17. Here, where the Court orders vacatur, *CASA* does not apply.

[4] Humane World for Animals, as *amicus curiae*, rehashes Defendants' preliminary injunction argument related to the statute of limitations. ECF No. 50. It argues that vacatur of the Challenged Rules is not available because USDA applied the Challenged Rules to the Plaintiffs in other instances (not challenged here) outside the statute of limitations window. *Id.* at 7–17. The Court already considered and rejected this argument at the preliminary injunction stage. ECF No. 20 at 3–5.

not named in this lawsuit, Defendants argue. *Id.* at 2. Further, Defendants argue the National Celebration Association Plaintiff (the "Association") cannot seek this relief, because it has not shown that past disqualifications continue to injure it. *Id.* at 2–3. Plaintiffs respond that the Association was required to enforce the challenged disqualifications. ECF No. 52 at 2–3. Thus, Plaintiffs argue, the Association can challenge the disqualifications, even if some of those challenges also harmed individual horse owners who are not parties to this lawsuit. *Id.* at 3.

Again, Plaintiffs are correct. To start, two of the challenged disqualifications—one occurring at the 2023 Spring Extravaganza and one at the 2024 Alabama Jubilee—involve only horses owned by individual Plaintiff Tom Gould. *Compare* ECF No. 41-1 at 1–2 (these challenges involve two horses: "Marshall Mathers" and "Hip to the Trip"), *with* ECF No. 1 at 11 (Tom Gould owned "Marshall Mathers" and "Hip to the Trip" when they were disqualified at these events). Defendants do not contest the vacatur of these disqualifications. ECF No. 44 at 1–3.

The remainder of the Challenged Disqualifications occurred at National Celebration events run by the Association. ECF No. 41-1; ECF No. 1 at 12, 13. The Association was required, to its detriment, to enforce the disqualifications. ECF No. 1 at 3–6. And the disqualifications were unlawful, because they were based on unlawful USDA rules and regulations. ECF No. 20 at 5–12. This is likely enough for the Association to secure vacatur of the disqualifications. *See Nat'l Ass'n of Priv. Fund Managers*, 103 F.4th at 1114.

The parties frame this dispute around the nature of the Association's injury, but the Court already found these disqualifications injured the Association. *Id.* at 15 ("When horses are disqualified . . . the Association suffers both non-monetary and monetary harm."). Moreover, the disqualifications continue to injure the Association by discouraging entrants

and spectators from participating in its shows. *See* ECF No. 1 at 5–6. True, nonparty horse owners were also injured by these disqualifications. But providing a party appropriate relief sometimes necessarily benefits nonparties. *See CASA*, 606 U.S. at 851–52. The Association is entitled to vacatur of the disqualifications, regardless of any incidental benefit to the nonparty owners. Vacating the disqualifications may reverse at least some of the Association's harm for future shows, because potential entrants look at the disqualification rates from past years when deciding whether to sign up for a show. *Id.* at 44; *see also* ECF No. 52 at 3–4.

## CONCLUSION

For the reasons stated above, both Motions (ECF Nos. 37, 41) are **GRANTED**. The Court **GRANTS** partial summary judgment in Plaintiffs' favor on Counts One, Three, and Four. Counts Two, Five, and Six, are **DISMISSED without prejudice**. The No-Showback Rule, the Scar Rule, the USDA's horse disqualification rules that fail to provide adequate due process, and the specific disqualifications listed in Plaintiffs' Exhibit A (ECF No. 41-1) are **VACATED**. This vacatur is not party-restricted—Defendants may not enforce the vacated rules against anyone.

**SO ORDERED.**

August 26, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE